**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In Re: | ) | Case No. 20-02011-als11 |
| | ) | |
| **METRO CONCRETE, INC.** | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Debtor and Debtor in Possession | ) | Hon. Anita L. Shodeen |
| | ) | |
| 1713 S 11th Ave E | ) | *FIRST DAY MOTION* |
| Newton, IA  50208 | ) | **DEBTOR'S EMERGENCY AND *EX*** |
| | ) | ***PARTE* MOTION FOR ORDER** |
| | ) | **AUTHORIZING INTERIM USE OF** |
| | ) | **CASH COLLATERAL AND** |
| EIN: 82-5063674 | ) | **PROVIDING POST-PETITION LIENS** |
| | ) | **[**Bankruptcy Code Section 363, Bankruptcy |
| | ) | Rule 4001] |
| | ) | |
| _____ | ) | No Hearing Set |

Metro Concrete, Inc. (the "Debtor" or "Metro"), Debtor and Debtor in Possession, by and through its Proposed General Reorganization Counsel, Jeffrey D. Goetz, Esq., of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., respectfully files the instant Emergency and *Ex Parte* Motion (the "Motion") for entry of an interim order on an expedited basis (the "Interim Order"), and following a final hearing to be set by the Court (the "Final Hearing"), entry of a final order (the "Final Order"), pursuant to sections 105, 361, 362 and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), authorizing the Debtor to (a) use cash collateral, and (b) provide adequate protection to its pre-petition secured lender, Bank Iowa ("Secured Creditor").

In support of this Motion, the Debtor represents as follows:

**OVERVIEW**

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M).  Venue is proper in this district

pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362 and 363(b) of the Bankruptcy Code.

The Debtor filed its Voluntary Chapter 11 Petition (Docket Item 1) on November 2, 2020 ("Petition Date"). Pursuant to Bankruptcy Code Sections 1107 and 1108, since the Petition Date, the Debtor has continued in possession of its property and operation of its business as a Debtor in Possession. No motion for the appointment of a Chapter 11 Trustee has been filed.

### RELIEF SOUGHT

By this Motion, the Debtor seeks the entry of an Interim Order and a Final Order, which:

a) Authorizes the Debtor to use cash collateral (the "Cash Collateral") in which the Secured Creditor (more specifically identified below) has or asserts an interest;

b) Authorize the Debtor to provide adequate protection to the Secured Creditor for any decrease in the value (such decrease being a "Diminution of Value") of their respective interests in the Debtors' property resulting from (i) the use, sale or lease of the Debtors' property (including the use of Cash Collateral), (iii) the Carve Out, or (iv) the imposition of the automatic stay pursuant to Bankruptcy Code Sec. 362;

c) Modify the automatic stay imposed pursuant to Bankruptcy Code Sec 362 to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and Final Order;

d) Waive any applicable stays under the Bankruptcy Rules and provide for the immediate effectiveness of the Interim Order and the Final Order; and

e) Schedule a Final Hearing to allow for entry of the Final Order within thirty (30) days of the entry of the Interim Order (the "Interim Order Entry Date") (the date on which the Final Order is entered being the "Final Order Entry Date").

The Debtor is informed and believes and thereupon alleges Bank Iowa, identified on the Debtor's Schedule D (hereinafter collectively referred to as the "Secured Creditor") holds a validly perfected and enforceable lien on and security interest in, among other things, the Debtor's accounts, inventory, equipment, machinery and general intangibles, and all proceeds thereof (hereinafter the "Collateral"), all as more particularly described and evidenced by those several security agreements (the "Security Agreements") executed by the Debtor on various dates and perfected by various financing statements filed with the Iowa Secretary of State on various dates, respectively.

The Debtor's obligations to the Secured Creditor constitutes legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the various loan documents applicable thereto, including, without limitation, the Security Agreements.

Proceeds from the operations, collection of accounts and any other sums, cash or cash equivalents received from any source constitute cash collateral pursuant to Bankruptcy Code Section 363(a), which comprise the Cash Collateral of the Secured Creditor.  The Secured Creditor is entitled to adequate protection of its interest in the pre-petition collateral (including Cash Collateral) and the Debtor may not use the Cash Collateral for any purpose without the Secured Creditor's consent or upon order of the Court, after appropriate notice and hearing, and authorizing such use based on a finding that the secured party's position is adequately protected. The Debtor wishes to provide adequate protection to the Secured Creditor to the extent of its respective claimed interests under Bankruptcy Code Section 506 in the Cash Collateral heretofore and hereafter used.

The Debtor proposes that in consideration for the Debtor's use of the Cash Collateral as provided herein and as adequate protection for any diminution in the value of the Secured Creditor's security interests, Debtor proposes to grant to the Secured Creditor:

(a) a validly perfected first priority lien on and security interest in all of Debtor's post-petition property and proceeds thereof (the "Collateral"), subject to existing valid, perfected and superior liens in the Collateral held by other creditors, if any, and the Carve-Out (as defined below). The rights, liens and interests granted to the Secured Creditor hereunder shall be based on the Secured Creditor's relative rights, liens and interests in the Debtor's Cash Collateral pre-petition. Upon entry of an Order granting this Motion, the post-petition security interests and liens proposed to be granted hereunder shall be valid, perfected and enforceable and shall be deemed effective and automatically perfected as of the Petition Date without the necessity of the Secured Creditor taking any further action. Secured Creditor may, however, at its respective option, file continuation statements, financing statements or such documents as it deems necessary to evidence its respective security interests in the Collateral. Upon request by the Secured Creditor, the Debtor will execute and deliver any and all such documents, or financing statements, as are necessary to effect and perfect the Secured Creditor's security interests as set forth in this paragraph.

(b) In the event of, and only in the case of Diminution of Value of the Secured Creditor's interests in the Collateral, a super-priority claim that shall have priority in the Debtor's bankruptcy case over all priority claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered

pursuant to §§ 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726(b), and 1114 of the Bankruptcy Code or otherwise. This super-priority claim shall be subject and subordinate only to the carve-out described below and not to any other unsecured claim (having administrative priority or otherwise). The Carve-Out shall include any fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930 and fees and expenses incurred by the Debtor's professionals and approved by the Court in an amount not to exceed $100,000.00 (the "Carve-Out"). It is the intention of the Debtor to expand upon the rights of the Secured Creditor and to "prime" all administrative expenses except for the carve-out described herein.

As further adequate protection, the Debtor will make post-petition monthly payments to the Secured Creditor in an amount equal to the non-default and Contract amount paid pre-petition, pursuant to the Debtor's pre-petition loan documents with the Secured Creditor, unless the Debtor and such Secured Creditor agree to a different or lesser amount.

The Debtor proposes that it shall be authorized to use Cash Collateral for the payment of its usual, ordinary, customary, regular, and necessary post-petition expenses incurred in the ordinary course of Debtor's business and for payment of those pre-petition claims approved and allowed by Order of the Bankruptcy Court and not otherwise. Except as expressly modified herein, the Debtors are authorized to use cash collateral, including restricted deposits, through December 13, 2020, pursuant to the 6-week interim cash collateral budget attached hereto as Exhibit "A" and incorporated by reference herein. In addition, there shall be, during the budget period, no more than 15% cumulative unfavorable variance on total disbursements and total collection absent prior written approval of the Secured Creditor.

Any of the following payments shall **not** be considered ordinary and usual expenses necessary to continue the operation of the Debtor's business unless the Secured Creditor consents to any such payment in writing prior to such payment being made and provided approval of this Court is obtained : (1) operation of the Debtor's business at any fixed locations other than the pre-petition business premises or locations;  (2) payment of trade debt incurred prior to the commencement of this case, unless approved by Order of the Bankruptcy Court;  (3) payment of any non-trust fund taxes owed prior to the date the Petition was filed by the Debtor; and (4)  payment of any other debt incurred prior to the commencement of this case, except as provided for in Debtor's confirmed Plan  (The foregoing payments due are merely illustrative and not the exclusive list of payments that will not be considered ordinary and usual expenses). Such authorization shall continue for a period extending to and including the Confirmation Date or dismissal of the case, on an interim and final basis, subject to the following terms and conditions:

    (a)    All proceeds received from the Debtor's operations of its business, in the ordinary course of its business, and the collection of accounts receivable and profits, shall be deposited in the DIP Accounts.  Only the ordinary and usual expenses necessary to continue operation of the business, incurred after the commencement of the bankruptcy case, shall be paid from the DIP Accounts, and other payments as the Court shall allow from time to time.

    (b)    On or before thirty (30) days after the Petition Date, the Debtor shall provide to the Secured Creditor an initial aging of all accounts receivable and accounts payable and a list of all inventory, plus total current operating expenses and total current

collections. This report shall be updated and provided to the Secured Creditor by the 30th day of each month thereafter (the "Reports").

(c) The Secured Creditor shall, at any time, be permitted to conduct a full inspection of the accounts of the Debtor by visiting the Debtor's premises to inspect, verify and photocopy all such records and to inspect, appraise and document the Collateral. Debtor proposes to grant the Secured Creditor, its agents and employees, a license to enter upon all such premises for such purposes during its regular, customary and ordinary business hours, subject to all security restrictions imposed by various health, environmental and regulatory agencies. The Secured Creditor shall also have access, within 5 business days of any request, to the Debtor and its management, personnel and advisors.

(d) On or before thirty (30) days after the Petition Date, the Debtor shall prepare and provide the Secured Creditor with a balance sheet and income statement existing as of the filing date of Debtor's Petition. Within thirty (30) days of each successive month, Debtor shall provide an updated balance sheet and income statement along with a copy of all monthly reports provided to the Court and/or the United States Trustee.

(e) All Collateral shall be insured to its full value, and Debtor shall otherwise comply with the terms and conditions of the Secured Creditor. Evidence of insurance listing Secured Creditor as insured mortgagee/loss payee shall be provided within thirty (30) days of the Petition Date.

(f) If at any time the Debtor fails to properly insure the Collateral, fails to pay any local, state or federal taxes as they become due, fails to pay fees required by the U.S.

Trustee or fails to comply with any other term of this Motion ("Default"), the Secured Creditor shall give the Debtor and its attorney written notice that it has thirty (30) days to cure such default after the mailing or transmission of written notice of such default. If the default is not cured, the Secured Creditor may seek entry of an order granting it relief from the automatic stay. Upon such termination, the Secured Creditor shall be authorized to terminate the use of Cash Collateral and take such action against the Collateral as permitted under its respective loan documents, including, without limitation, the Security Agreements, and applicable state law.

(g) Any termination of the automatic stay under this Motion and any Order thereon shall apply to the above Chapter 11 case or any subsequent dismissal.

All rights of the Secured Creditor to seek additional adequate protection for Debtor's use of Cash Collateral, to file for relief from the automatic stay, to seek dismissal or to assert any other right or cause of action, or any other matter with respect to the Debtor whether in this bankruptcy case, or otherwise, are expressly reserved. The failure or delay by the Secured Creditor to seek relief or otherwise exercise its rights and remedies under this Motion or any loan documents shall not constitute a waiver of any of the rights of the Secured Creditor.

This Motion, the Security Agreements, and any documents and instruments required of Debtor by this Motion are, or when executed and delivered, will be valid, binding and enforceable in accordance with their respective terms upon entry of an Order approving this Motion.

No representation or warranty of Debtor contained in this Motion or in any statement, instrument, or other document furnished by Debtor in connection with this Motion, or prior to this Motion contains any untrue statement of material fact or omits to state any material fact.

Immediately upon entry by the Court of an Order approving this Motion, the provisions of the Motion shall be valid and binding upon and inure to the benefit of the Secured Creditor, all other creditors of the Debtor, and all other parties in interest. Pursuant to Bankruptcy Rule 4001(d), a copy of this Motion shall be provided to the twenty (20) largest unsecured creditors. If no objection is filed, the terms and conditions of this Motion may be approved without further order and shall be binding on all parties in interest on a final basis.

The Debtor agrees to pay attorney fees incurred by the Secured Creditor, as set out in the loan documents, to the extent authorized under Bankruptcy Code Section 506.

Therefore, the Debtor respectfully requests the Court enter an order approving the instant Motion and for such other and further relief as may be just and equitable under the circumstances.

Dated:  11/3/2020

*/s/ Jeffrey Goetz*
Jeffrey D. Goetz, Esq., AT0002832
Bradshaw Fowler Proctor & Fairgrave, PC
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8007
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

Proposed General Reorganization Counsel
Metro Concrete, Inc., Debtor and Debtor in Possession

CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

*/s/      Barbara Warner*

### VERIFICATION BY COUNSEL FOR DEBTOR

I, Jeffrey D. Goetz, declare as follows:

1.   The matters stated in this Declaration are true and correct and within my own personal knowledge and belief. If called as a witness, I could and would competently testify hereto.

2.   I am an attorney licensed to practice law before this court and am the proposed General Reorganization Counsel for the Debtor. I am duly admitted to practice law in the courts of the States of Iowa and California and in the United States District Court for the Southern District of Iowa.

3.   I have personal knowledge of the facts set forth in the foregoing Motion and, if called upon as a witness, I could and would competently testify as to all of the matters stated therein.

I declare under penalty of perjury under the laws of the United States and the laws of the State of Iowa that the foregoing is true and correct and is executed in Des Moines, Iowa this 3rd day of November, 2020.

                                                      */s/ Jeffrey Goetz*
                                                    Jeffrey D. Goetz

## VERIFICATION BY CORPORATE OFFICER RICHARD HAMMONS

I, Richard Hammons, declare as follows:

1.	I am the President of the Debtor and Debtor in Possession Metro Concrete, Inc., and am authorized to make this Declaration. The matters stated in this Declaration are true and correct and within my own personal knowledge and belief. If called as a witness, I could and would competently testify hereto.

2.	I have personal knowledge of the facts set forth in the foregoing Motion and, if called upon as a witness, I could and would competently testify as to all of the matters stated therein.

I declare under penalty of perjury under the laws of the United States and the laws of the State of Iowa that the foregoing is true and correct and is executed in Dallas Center, Iowa this 3rd day of November, 2020.

/s/ Richard Hammons
Richard Hammons, President

**Metro Concrete, Inc.**
Budget

| | 11/02/2020 - 11/08/2020 | 11/09/2020 - 11/15/2020 | 11/16/2020 - 11/22/2020 | 11/23/2020 - 11/29/2020 | 11/30/2020 - 12/06/2020 | 12/07/2020 - 12/13/2020 |
|---|---|---|---|---|---|---|
| **Beginning Cash (Total) [1]** | $ 28,331.15 | $ 13,581.97 | $27,846.20 | $ 5,306.20 | $ (4,235.36) | $ 5,488.99 |
| **Cash Receipts:** | | | | | | |
| Rochon | $        - | $116,730.79 | $        - | $        - | $        - | $339,408.22 |
| Other Cash Receipts | 8,010.00 | 8,010.00 | 8,010.00 | 8,010.00 | 48,035.00 | - |
| **Total Cash Receipts** | $ 8,010.00 | $124,740.79 | $ 8,010.00 | $ 8,010.00 | $48,035.00 | $339,408.22 |
| | | | | | | |
| **Cash Disbursements** | | | | | | |
| COGS | $ 9,848.00 | $ 97,504.75 | $18,900.00 | $ 5,551.56 | $23,000.00 | $315,467.40 |
| Equipment | 1,111.26 | - | - | - | 1,111.26 | - |
| Payroll Taxes | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 |
| Auto Expense | 1,099.92 | 1,321.81 | - | - | 1,099.92 | 1,321.81 |
| Payroll & Payroll Expenses | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| Gas | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Utilities | - | - | - | 350.00 | - | - |
| Supplies | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Hotels | 650.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| Per Diem | 450.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 |
| Adequate Protection Payments | - | - | - | - | 1,449.47 | |
| **Total Cash Disbursements** | $ 22,759.18 | $110,476.56 | $30,550.00 | $17,551.56 | $38,310.65 | $328,439.21 |
| **Net Cash Flows** | (14,749.18) | 14,264.23 | (22,540.00) | (9,541.56) | 9,724.35 | 10,969.01 |
| **Ending Cash** | $ 13,581.97 | $ 27,846.20 | $ 5,306.20 | $ (4,235.36) | $ 5,488.99 | $ 16,458.00 |

**Notes**
[1] Balances as of 11/02/2020 for both the Bank of Iowa account and the Great Southern Bank account.