

## Agreement for Services

This Agreement for Services ("Agreement") is entered into by and between Newpoint Advisors Corporation, ("NAC") a corporation duly organized and existing under the laws of the State of Illinois, and Metro Concrete, Inc., and its Related Entities ("Client" or "Company"). In consideration of the mutual covenants herein contained, the parties agree as follows:

1) **Scope of Work**. Client will request that NAC perform services for Client or on behalf of Client for its shareholders, creditors or others. NAC's Scope of Work will be as follows:

    **Financial Advisory Services for Chapter 11 Bankruptcy – in the U.S. Bankruptcy Court, Southern District of Iowa**
    - Assist with preparation of Chapter 11 bankruptcy petition and schedules
    - Preparation of Chapter 11 cash collateral budget and monthly operating reports
    - Assist with preparation of Chapter 11 Plan and Disclosure Statement
    - Marketing and sale of the Company as a going concern, if applicable
    - Attend hearings as necessary
    - Consult with Client throughout engagement
    - Other services, as requested by the Client or Court

2) **Compensation**. Payment by Client is subject to Bankruptcy Court approval. NAC will charge for work performed at a rate or fee commensurate with the background and experience of the individual assigned by NAC who performs services pursuant to the terms of this Agreement. Such hourly rates may be adjusted by NAC upon 30 days written notice to Client. NAC will invoice monthly for services performed and expenses incurred hereunder and payment shall be made in accordance with interim compensation procedures or as otherwise permitted by the Bankruptcy Court, using the following wire transfer instructions, or via ACH or debit card, whichever the Client prefers.

    **Wire Transfer:**
    Newpoint Advisors Corporation
    1320 Tower Road
    Schaumburg, IL 60173
    FEIN:
    Illinois S Corp
    Bank: Byline Bank
    Account Name: Newpoint Advisors
    ABA:
    Acct:



Rates for professionals that will be involved in this matter are set forth below:

| | |
|---|---|
| Matthew Brash | $235 |
| Aaron Osborne | $235 |
| Peter Bendoris | $235 |
| Others | $75 – 225 |

NAC will receive an advance fee retainer of $5,000 prior to commence of services. This retainer will be held in trust by NAC upon receipt and applied upon approval of applications for compensation by the Court.

3) **Reimbursement of Expenses**. Client agrees to reimburse NAC for all reasonable and necessary out-of-pocket travel and other expenses incurred directly relating to any work undertaken.

4) **Rights to Work Product**. Client shall retain exclusive rights and ownership of all work product created under this Agreement. Work product includes content of reports issued but excludes, among other things, all working papers of NAC and any methodology, formulas, correspondence, memoranda, calculations, notes, etc. that NAC may have used in the development of the reports above or such working papers or in the performance of any work on behalf of the Client.

5) **Cancellation**. Either party hereto may terminate this Agreement prior to the completion of any work authorized hereunder by giving three (3) business days written notice to the other party. Upon such termination of this Agreement, Client will pay NAC for all compensation due in accordance with Paragraph 2 plus all outstanding and unreimbursed expenses in accordance with Paragraph 3.

6) **Personnel**. Each party hereto agrees that it will not employ or contract with any personnel or representatives of the other party hereto during the period of work provided for hereunder and for a period of one (1) year thereafter after termination of this Agreement without the written consent of the other party. This prohibition on employing personnel or representatives of the other party extends to and bars employment, or contracting, either directly or indirectly, by each parties' principals, owners, investors, subsidiaries and affiliates, and any of their successors or assigns, or any other entities in which any of the principals, owners or investors have more than a five percent (5%) ownership or investment interest. In the event any personnel or representative is employed or contracted with contrary to this paragraph, the employing/contracting party will pay the other party one-third (1/3) of the first full year total expected cash compensation to be paid by the employing/contracting party at time of hire, regardless of when compensation is actually paid to the employed/contracted personnel or representative. In any dispute under this provision, the prevailing party will be entitled to its attorney fees and costs from the other party.

7) **Independent Contractor**. Neither NAC nor any of its personnel, nor any entity or personnel performing work or services hereunder shall be deemed to be an agent, employee, director or officer of Client. Instead, they shall be deemed to be an independent contractor for Client (except for any personnel of NAC who specifically serves as an elected corporate director, officer, executive or other employee who shall be considered an agent or employee of Client). NAC is being retained by Client only as a consultant. NAC is not being hired or retained as an employee, director or officer of the



Client. In making decisions with respect to consulting with Client under this Agreement or taking any other action related to or in connection with this Agreement, NAC shall have no liability to any third party, and shall not be deemed to be in control of the operations of the Client, or to be an "owner or operator" or acting as a "responsible person" or managing agent with respect to the operation or management of the Client unless NAC specifically is engaged for that purpose.

8) **Confidentiality and Independence**. NAC will maintain in strict confidence any and all information of a non-public nature relating to Client or its business that it may gain or develop in the course of its engagement by Client (including, without limitation, its own work product and advice to Client), and will not disclose any such information to any person during or after its engagement by Client except with the consent of Client, as permitted by law, required by court order or subpoena, or required by a regulatory subpoena. In addition, if information is communicated to NAC or developed by NAC at any time which indicates that Client or any of its affiliates, officers, employees, or shareholders may have been or may be involved in fraudulent activities of any nature, such information may be disclosed to any third party as NAC, in its sole discretion, deems appropriate.

NAC will not without Client's consent during the term of this Agreement nor for a period of three (3) years after date of this Agreement knowingly utilize this confidential information in any work other than for Client.

NAC receives referrals and maintains business relationships with banks, insurance companies, financial organizations, investors, attorneys, etc. on a regular basis and has a variety of financial interests. Such relationships and interests, however, are always dealt with separately from Client's business.

9) **Authorization**. Client warrants and represents that this Agreement represents a valid and binding obligation of Client.

10) **Governing Law and Jurisdiction**. The terms of this Agreement shall be construed, interpreted and enforced under laws of the State of Illinois without regard to the State of Illinois rules concerning conflicts of laws. Any litigation regarding this Agreement shall be in the United States Bankruptcy Court for the Northern District of Illinois.

*IN WITNESS WHEREOF*, the parties hereto have executed this Agreement on the last date written below.

**Newpoint Advisors Corporation**                                **Client:**

By: _____                                 By: _____

Its:  Matthew Brash                                              Its:  Richard Hammons

Dated:  November 2, 2020                                         Dated:  November 2, 2020

Page 3